# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

SELECT COMFORT CORPORATION,

    Plaintiff,

v.

INNOVATION ADS, INC., ONTARGET
MEDIA HOLDINGS, INC., SEAPORT
CAPITAL, LLC, and RICK STEWART,

    Defendants.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 10-925 (MJD/XXX)

Andrew S. Hansen, Cynthia S. Wingert, and Meghan M. Anzelc, Oppenheimer Wolff & Donnelly LLP, Counsel for Defendant Select Comfort Corporation.

Jeffrey M. Thompson and Megan D. Yelle, Meagher & Geer, PLLP, Counsel for Defendants Innovation Ads, Inc., Rick Stewart, and OnTarget Media Holdings, Inc.

Norman J. Baer and Nathan P. Brennan, Anthony Ostlund Baer & Louwagie PA, Counsel for Defendant Seaport Capital, LLC.

## I.  INTRODUCTION

This matter is before the Court on Defendant Seaport Capital, LLC's

Motion to Dismiss [Docket No. 20]; Motion to Dismiss Under F.R.C.P. 12(b) by

Innovation Ads, Inc., OnTarget Media Holdings, Inc., and Rick Stewart [Docket

No. 25]; Motion to Strike by Innovation Ads, Inc., OnTarget Media Holdings, Inc., and Rick Stewart [Docket No. 51]; and Defendants Innovation Ads, Inc., OnTarget Media Holdings, Inc., and Rick Stewart's Motion to Transfer, Stay or Abstain [Docket No. 55]. The Court heard oral argument on November 19, 2010. Because the Court lacks personal jurisdiction over Defendants, this matter is dismissed.

## II. BACKGROUND

### A. Factual Background

#### 1. Parties

Plaintiff Select Comfort Corporation ("Select Comfort") is a corporation organized under the laws of Minnesota with its principal place of business in Minnesota. Select Comfort produces and sells air technology bedding systems.

Defendant Innovation Ads, Inc. ("Innovation") is a corporation organized under the laws of New York with its principal place of business in New York.

Defendant OnTarget Media Holdings, Inc. ("OnTarget") is a corporation organized under the laws of Delaware with its principal place of business in New York. The majority stock ownership of OnTarget is held by limited partnerships affiliated with Defendant Seaport Capital, LLC ("Seaport").

Defendant Seaport is a limited liability company organized under the laws of Delaware with its principal place of business in New York.

Non-party Direct Response Media, Inc. ("DRM") is a corporation currently in bankruptcy in the United States Bankruptcy Court for the District of Delaware. It is a television media buying source that places direct media ads for its customers with media outlets. DRM, Innovation, Seaport, and OnTarget are all closely related businesses, sharing officers and finances. OnTarget owns Innovation and DRM.

Defendant Rick Stewart was the Chief Financial Officer of Innovation and OnTarget. Select Comfort alleges that he was also the Chief Financial Officer of DRM, but Stewart avers he was never an officer of DRM. The Complaint alleges that he is a citizen of New York.

Plaintiff alleges that, of the funds a client pays to DRM, 92 to 92.5 percent goes to pay for media buys; the remaining amount, 7.5 to 8 percent, is retained by DRM as commission.

In December 2008, Select Comfort and DRM entered into a contract, under which DRM would select, place, and purchase media advertisements for Select

Comfort. In 2009, Select Comfort paid DRM approximately $15 million. This amount included all estimated charges for media buys, plus commissions.

CapitalSource Finance, LLC ("CapSource") is a creditor of DRM, Innovation, and OnTarget. Over time, CapSource provided them with a line of credit and multiple loans.

### 2. Defendants' Withdrawals from DRM's Account

In 2009, Innovation and OnTarget withdrew a total of over $13 million from DRM's primary checking account, allegedly to satisfy Innovation's and OnTarget's credit obligations to CapSource. The withdrawn money included Select Comfort's funds being held by DRM and threatened DRM's ability to make payments for Select Comfort's media buys. Plaintiff claims that the withdrawals were directed by Seaport and Stewart.

### 3. CapSource's Sweeping of DRM's Accounts

In fall 2009, Innovation and OnTarget defaulted on the credit agreement with CapSource. As a result, on December 14, 2009, CapSource swept approximately $6 million from DRM's bank account, which included at least some of the funds paid by Select Comfort.

Approximately $2.5 million paid by Select Comfort to DRM for media purchases which ran in October and November 2009 were not paid by DRM to the media outlets.

### 4. DRM's Bankruptcy

DRM filed for bankruptcy in the Bankruptcy Court for the District of Delaware on January 8, 2010. Select Comfort is listed as a debtor and unsecured creditor of DRM.

On March 31, 2010, DRM's bankruptcy trustee filed an adversary proceeding against Innovation seeking return of the funds Innovation withdrew from DRM's account, including the $6 million CapSource swept from DRM's account. On June 16, 2010, the Trustee filed an Amended Complaint against all Defendants in this action, as well as other defendants. The Amended Complaint is based on Defendants' failure to properly operate DRM as a separate corporate entity and the money taken from DRM's account to repay CapSource.

## B. Procedural History

On March 24, 2010, Select Comfort filed, in this Court, a complaint against Innovation, OnTarget, Seaport, Stewart, and three DRM officers. Among the counts asserted were a breach of contract count based on piercing DRM's corporate veil and a fraudulent transfer claim based on piercing DRM's

corporate veil. On April 1, 2010, the DRM Trustee informed Select Comfort that he believed that the claims in Select Comfort's original complaint were subject to the automatic bankruptcy stay. Therefore, Select Comfort drafted an Amended Complaint, which was approved by the Trustee, and filed it in this Court on May 18, 2010. The Amended Complaint eliminated claims against DRM's officers and eliminated any claims explicitly premised on piercing DRM's corporate veil.

The Amended Complaint alleges five counts against four defendants: Innovation, OnTarget, Seaport, and Stewart. These five counts are as follows: Count I: Tortious Interference with Contract, against all Defendants; Count II: Tortious Interference with a Business Relationship, against all Defendants; Count III: Conversion, against all Defendants; Count IV: Unjust Enrichment, against all Defendants; and Count V: Money Had and Received, against all Defendants.

Defendants now move this Court to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to join and indispensible party or, in the alternative to transfer, stay, or abstain. Defendants also move to strike one of the exhibits submitted by Plaintiff.

**III.   DISCUSSION**

    **A. Motion to Strike**

Defendants Innovation, OnTarget, and Stewart move to strike the transcript of the DRM 341 Meeting of Creditors held on February 9, 2010. Defendants argue that the transcript is inadmissible hearsay.

The Court denies the motion to strike. First, there is authority that hearsay may be considered in deciding a motion to dismiss for lack of personal jurisdiction. See, e.g., Campbell Pet Co. v. Miale, 542 F.3d 879, 889 (Fed. Cir. 2008). In any case, this particular transcript is quoted liberally throughout the Complaint, and so is embraced by the Complaint. Defendants do not challenge the authenticity of the transcript. Finally, the testimony of DRM's representatives at the 341 hearing was under oath at a hearing before a court-appointed trustee. In this limited circumstance of a pre-discovery motion to dismiss for lack of personal jurisdiction when the proffered evidence is testimony given under oath before a bankruptcy trustee and there is no challenge to the accuracy of the transcript, the Court holds that the statements have sufficient indicia of reliability to be considered by the Court. See Fed. R. Evid. 807.

**B. Motion to Dismiss for Lack of Personal Jurisdiction**

### 1. Legal Standard

While the plaintiff eventually bears the burden to establish personal jurisdiction by preponderance of the evidence, when personal jurisdiction is

decided based upon affidavits, prior to an evidentiary hearing, the plaintiff need only establish a prima facie showing of personal jurisdiction. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). "[T]he court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." Id. (citations omitted).

"A two-step inquiry is employed when determining whether a federal court has jurisdiction over a non-resident party: (1) whether the facts presented satisfy the forum state's long-arm statute, and (2) whether the nonresident has 'minimum contacts' with the forum state, so that the court's exercise of jurisdiction would be fair and in accordance with due process." Soo Line Railroad Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528 (8th Cir. 1991) (citation omitted). The Minnesota long-arm statute extends jurisdiction to the fullest extent permitted by the due process clause. Id. Thus, the Court need only determine whether the due process clause allows jurisdiction in this case.

The Eighth Circuit has explained:

> The due process clause requires there be minimum contacts between the defendant and the forum state before the forum state may exercise jurisdiction over the defendant. Sufficient contacts exist when the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend

> traditional notions of fair play and substantial justice. In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Id. at 528-29 (citations omitted).

In order to determine whether the exercise of jurisdiction comports with due process, the Court examines five factors:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir. 2003) (citation omitted).

A court can exercise either specific or general personal jurisdiction over a party. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while [g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007) (citation omitted). General personal jurisdiction exists when a party has "continuous and systematic" contacts with the forum state. Id.

### 2. Personal Jurisdiction Through Veil-Piercing

Plaintiff concedes that Defendants do not, independently, have sufficient contacts with Minnesota to subject them to personal jurisdiction here. Instead, Plaintiff alleges that Defendants are the alter egos of DRM and, through DRM's actions, are subject to personal jurisdiction in Minnesota.

A court may find personal jurisdiction over a defendant through piercing the corporate veil, in which case, the decision will rest on whether piercing the veil is proper under the law of the forum state. Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc., 519 F.2d 634, 638 (8th Cir. 1975).

### 3. Minnesota Veil-Piercing Standard

There is a "presumption of separateness" between a parent and subsidiary corporation. Ass'n of Mill & Elevator Mutual Ins. Co. v. Barzen Int'l, Inc., 553 N.W.2d 446, 449 (Minn. Ct. App. 1996) (citation omitted). However, "[p]iercing the corporate veil is an equitable remedy that may be applied in order to avoid an injustice." Equity Trust Co. Custodian ex rel. Eisenmenger IRA v. Cole, 766 N.W.2d 334, 339 (Minn. Ct. App. 2009) (citation omitted). "A court may pierce the corporate veil to hold a party liable for the acts of a corporate entity if the entity is used for a fraudulent purpose or the party is the alter ego of the entity. When using the alter ego theory to pierce the corporate veil, courts look to the

reality and not form, with how the corporation operated and the individual defendant's relationship to that operation." Id. (citations omitted). "If the corporation or limited liability company is found to be an 'alter ego' or mere 'instrumentality,' a court may pierce the corporate veil if there is an element of injustice or fundamental unfairness." Id. (citation omitted).

### 4. Analysis

The parties point to a variety of evidence that both supports and detracts from the propriety of piercing the corporate veil between DRM and each Defendant. However, regardless of whether piercing the corporate veil would be legally appropriate, personal jurisdiction fails.

There is no evidence to support personal jurisdiction over any of the Defendants independently – that is, without piercing the corporate veil. Each Defendant does no or negligible business in Minnesota; owns no or negligible property in the state; has no or negligible contact with the state; and otherwise, does not interact with this forum. None of the Defendants, themselves, entered a contractual relationship with Select Comfort. They took no actions aimed at Minnesota.

There is no allegation or evidence to support general jurisdiction over DRM (or any Defendant) in Minnesota, so piercing the corporate veil cannot create general jurisdiction over any of the Defendants.

The only possible remaining ground for jurisdiction over Defendants is that DRM is subject to **specific** personal jurisdiction in Minnesota, and, that this specific personal jurisdiction is vicariously extended to the Defendants currently before this Court.

Specific jurisdiction is based upon the third personal jurisdiction factor – the relation of the cause of action to the contacts. Specific jurisdiction must be based upon the claims that Select Comfort has chosen to assert. "In other words, the cause of action must arise out of or relate to a defendant's activities within a state." Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (citation omitted).

DRM's only contacts with Minnesota, based on the current record before the Court, are related to its contract and relationship with Select Comfort. However, in order to avoid the bankruptcy stay, Plaintiff is adamant that its claims are completely independent of the DRM contract and that it is not seeking to hold Defendants liable under an alter ego theory. Therefore, DRM's few

12

contacts with Minnesota, even if imputed to all Defendants, are unrelated to the causes of action in this lawsuit, which are independent torts committed outside Minnesota. Therefore, the causes of action asserted in this case do not arise out of and are not related to DRM's (or its alter egos') contacts with Minnesota.

This Court cannot exercise personal jurisdiction over Defendants.

### 5. Jurisdictional Discovery

Select Comfort asks that, if the Court finds that it has not met its burden of showing personal jurisdiction, it grant Select Comfort limited jurisdictional discovery. The Court denies this request.

Additional jurisdictional discovery may show that piercing the corporate veil is more or less appropriate, but Plaintiff does not assert that discovery will show that general jurisdiction exists over DRM; that DRM is subject to specific jurisdiction in Minnesota based on contacts related to the causes of action asserted in this case, which are wholly independent of the DRM-Select Comfort contract; or that Defendants have their own contacts with Minnesota sufficient to establish specific or general jurisdiction. Therefore, there is no indication how jurisdictional discovery could be relevant.

## IV. CONCLUSION

The Court dismisses all Defendants based on lack of personal jurisdiction. Because the Court concludes that it lacks personal jurisdiction over Defendants, it does not reach the various alternative grounds for Defendants' motions to dismiss.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1. Defendant Seaport Capital, LLC's Motion to Dismiss [Docket No. 20] is **GRANTED**.

2. Motion to Dismiss Under F.R.C.P. 12(b) by Innovation Ads, Inc., OnTarget Media Holdings, Inc., and Rick Stewart [Docket No. 25] is **GRANTED**.

3. Motion to Strike by Innovation Ads, Inc., OnTarget Media Holdings, Inc., and Rick Stewart [Docket No. 51] is **DENIED**.

4. Defendants Innovation Ads, Inc., OnTarget Media Holdings, Inc., and Rick Stewart's Motion to Transfer, Stay or Abstain [Docket No. 55] is **DENIED AS MOOT**.

5. This matter is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 5, 2011  s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court